IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF GEORGIA

AUGUSTA DIVISION

| | | |
|---|---|---|
| STEPHEN LEE MOORE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CV 115-074 |
| | ) | |
| CAROLYN W. COLVIN, Acting | ) | |
| Commissioner of Social Security | ) | |
| Administration, | ) | |
| | ) | |
| Defendant. | ) | |

_____

**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**
_____

Stephen Lee Moore ("Plaintiff") appeals the decision of the Commissioner of Social Security ("Commissioner") denying his application for Disability Insurance Benefits ("DIB") under the Social Security Act. Upon consideration of the briefs submitted by both parties, the record evidence, and the relevant statutory and case law, the Court **REPORTS** and **RECOMMENDS**, pursuant to sentence four of 42 U.S.C. § 405(g), the Commissioner's final decision be **REVERSED** and the case be **REMANDED** to the Commissioner for further consideration in accordance with this opinion.

**I.    BACKGROUND**

Plaintiff is a fifty-one year old male born August 24, 1964. Tr. ("R."), p. 123. Plaintiff has a college education and has prior work experience as an electronics system maintenance supervisor and an electronic equipment repairer. R. 70. Plaintiff applied for DIB on January 11,

2012, alleging a disability onset date of December 31, 2010. R. 135. The Social Security Administration denied Plaintiff's application initially and on reconsideration. R. 73-80, 97. Plaintiff then requested a hearing before an Administrative Law Judge ("ALJ"), and the ALJ held a hearing on June 12, 2013. R. 47-72. At the hearing, the ALJ heard testimony from Plaintiff, who was represented by counsel, and from Mary Cornelius, a Vocational Expert ("VE"). R. 43. On October 28, 2013, the ALJ issued an unfavorable decision. R. 38.

Applying the five-step sequential process required by 20 C.F.R. §§ 404.1520 and 416.920, the ALJ found:

1. The claimant did not engage in substantial gainful activity during the period from his alleged onset date of December 31, 2010 through his date last insured of December 31, 2011 (20 C.F.R. § 404.1571 *et seq.*).

2. Through the date last insured, the claimant had the following severe combination of impairments: degenerative disk disease in the lumbar and cervical spine, degenerative joint disease in knees, fibromyalgia, diabetes mellitus, hypertension, sleep apnea, peripheral neuropathy, an affective disorder, and an anxiety disorder (20 C.F.R. 404. 1520(c)).

3. Through the date last insured, the claimant did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. § 404.1520(d), 404.1525 and 404.1526).

4. After careful consideration of the entire record, I find that, through the date last insured, the claimant had the residual functional capacity to perform a wide range of sedentary work as defined in 20 C.F.R. 404.1567(a). The claimant was able to lift up to 10 pounds occasionally, stand and walk for approximately 2 hours of an 8-hour workday, and sit for approximately 6 hours of an 8-hour workday. The claimant was able to perform frequent balancing and occasional stooping, kneeling, crouching, and climbing of ramps or stairs. He could not crawl or climb ladders, ropes, or scaffolds. The Claimant needed to avoid concentrated exposure to vibrations, wet conditions, and hazards in the workplace such as dangerous moving machinery and working at heights. The claimant was able to perform simple tasks, but no detailed or complex tasks. He

2

> could have superficial contact with the public, but needed to avoid jobs that require customer service, counter work, or sales work. The claimant was able to work in proximity to others, but would have performed best in more solitary work tasks.
>
> 5. Through the date last insured, considering the claimant's age, education, work experience, and residual functional capacity, there were jobs that existed in significant numbers in the national economy that the claimant could have performed (20 CFR § 404.1569 and 404.1569(a)).

R. 22-37.

On March 20, 2015, the Appeals Council denied Plaintiff's request for review, R. 1-6, and the Commissioner's decision became "final" for the purpose of judicial review. 42 U.S.C. § 405(g). Plaintiff then filed this civil action requesting reversal or remand of the adverse decision. Plaintiff argues the Commissioner's decision is not supported by substantial evidence because the ALJ erred in finding Plaintiff's tic disorder was not a severe impairment, and also erred in failing to seek a medical expert's opinion as to the severity of Plaintiff's tic disorder. (See doc. no. 12, p. 12-16, ("Pl.'s Br.").) The Commissioner maintains that the ALJ's decision is supported by substantial evidence and should therefore be affirmed. (See doc. no. 13 ("Comm'r's Br.").)

## II. STANDARD OF REVIEW

Judicial review of social security cases is narrow and limited to the following questions: (1) whether the Commissioner's findings are supported by substantial evidence, and (2) whether the Commissioner applied the correct legal standards. Lewis v. Callahan, 125 F.3d 1436, 1439 (11th Cir. 1997). When considering whether the Commissioner's decision is supported by substantial evidence, the reviewing court may not decide the facts anew, reweigh the evidence, or substitute its judgment for the Commissioner's. Moore v. Barnhart, 405 F.3d 1208, 1211

(11th Cir. 2005); Cornelius v. Sullivan, 936 F.2d 1143, 1145 (11th Cir. 1991). Notwithstanding this measure of deference, the Court remains obligated to scrutinize the whole record to determine whether substantial evidence supports each essential administrative finding. Bloodsworth v. Heckler, 703 F.2d 1233, 1239 (11th Cir. 1983).

The Commissioner's factual findings should be affirmed if there is substantial evidence to support them. Barron v. Sullivan, 924 F.2d 227, 230 (11th Cir. 1991). Substantial evidence is "more than a scintilla, but less than a preponderance: '[i]t is such relevant evidence as a reasonable person would accept as adequate to support a conclusion.'" Martin v. Sullivan, 894 F.2d 1520, 1529 (11th Cir. 1990) (quoting Bloodsworth, 703 F.2d at 1239). If the Court finds substantial evidence exists to support the Commissioner's factual findings, it must uphold the Commissioner even if the evidence preponderates in favor of the claimant. Crawford v. Comm'r of Soc. Sec., 363 F.3d 1155, 1158-59 (11th Cir. 2004). Finally, the Commissioner's findings of fact must be grounded in the entire record; a decision that focuses on one aspect of the evidence and disregards other contrary evidence is not based upon substantial evidence. McCruter v. Bowen, 791 F.2d 1544, 1548 (11th Cir. 1986).

The deference accorded the Commissioner's findings of fact does not extend to her conclusions of law, which enjoy no presumption of validity. Brown v. Sullivan, 921 F.2d 1233, 1236 (11th Cir. 1991) (holding that judicial review of the Commissioner's legal conclusions are not subject to the substantial evidence standard). If the Commissioner fails either to apply correct legal standards or to provide the reviewing court with the means to determine whether correct legal standards were in fact applied, the Court must reverse the decision. Wiggins v. Schweiker, 679 F.2d 1387, 1389 (11th Cir. 1982).

## III. DISCUSSION

### A. A Claimant's Burden at Step Two of the Sequential Process Is Mild, and Only the Most Trivial Impairments May Be Rejected.

A severe impairment is one which significantly limits one's ability to perform "basic work activities." 20 C.F.R. § 404.1521(a) ("An impairment or combination of impairments is not severe if it does not significantly limit your physical or mental ability to do basic work activities."). Basic work activities involve "the abilities and aptitudes necessary to do most jobs." 20 C.F.R. § 404.1521(b). Examples include:

(1) Physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling;

(2) Capacities for seeing, hearing, and speaking;

(3) Understanding, carrying out, and remembering simple instructions;

(4) Use of judgment;

(4) Responding appropriately to supervision, co-workers and usual work situations; and

(5) Dealing with changes in a routine work setting.

Id.

Thus, in order to show a severe impairment, Plaintiff bears the burden of demonstrating that such impairment significantly affects his ability to perform basic work activities. See McDaniel v. Bowen, 800 F.2d 1026, 1031 (11th Cir. 1986); Brady v. Heckler, 724 F.2d 914, 920 (11th Cir. 1984) (*per curiam*). At the second step of the sequential evaluation process:

> If you do not have any impairment or combination of impairments which significantly limits your physical or mental ability to do basic work activities, we will find that you do not have a severe impairment and are, therefore, not disabled. We will not consider your age, education, and work experience.

20 C.F.R. § 404.1520(c). However, the severity test at step two of the sequential process is designed to screen out only clearly groundless claims. Stratton v. Bowen, 827 F.2d 1447, 1452 (11th Cir. 1987) (citing Baeder v. Heckler, 768 F.2d 547, 551 (3d Cir. 1985) for the proposition that the severity test has been described "as a de minimis requirement which only screens out those applicants whose medical problems could 'not possibly' prevent them from working").

In fact, the Eleventh Circuit describes step two as the "slight abnormality" test. Bridges v. Bowen, 815 F.2d 622, 625 (11th Cir. 1987) (*per curiam*) (citing Brady, 724 F.2d 914). Under this test:

> An impairment can be considered as not severe only if it is a slight abnormality which has such a minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education, or work experience.

Id. As the Eleventh Circuit has explained, "[s]tep two is a threshold inquiry" and "allows only claims based on the most trivial impairments to be rejected." McDaniel, 800 F.2d at 1031. The claimant's burden is "mild," id., and "the claimant need only show that an abnormality's effect is not so minimal that it would not interfere with [her] ability to work irrespective of age, education, or work experience." Cantrell v. Bowen, 804 F.2d 1571, 1573 (11th Cir. 1986) (*per curiam*).

### B. The ALJ's Step Two Severity Determination as to Plaintiff's Tic Disorder Is Not Supported by Substantial Evidence.

Plaintiff argues the ALJ erred at step two of the sequential process by failing to consider his tic disorder a "severe" impairment.[1] Pl.'s Br. 11-16. Specifically, Plaintiff

---

[1]A motor tic disorder involves short-lasting sudden movements that are often repetitive

6

asserts his tic disorder is a severe impairment that affected his ability to use his hands in work-related activities between the alleged onset date and the date last insured. (Id. at 13.) The Commissioner argues the ALJ's severity analysis at step two of the sequential evaluation was proper because the ALJ sufficiently addressed Plaintiff's tic disorder by citing medical opinion evidence suggesting the disorder was non-severe. Comm'r's Br. 4-7. Nevertheless, the question remains whether the ALJ's determination is supported by substantial evidence.

The ALJ addressed Plaintiff's tic disorder at step two, finding it was non-severe because there was little mention of the disorder prior to the date last insured, "no obvious loss of muscle function, atrophy or fasciculation . . . [and Plaintiff] could move all extremities without difficulty." R. 25. The ALJ also pointed to Plaintiff's extensive work history in suggesting he could work in spite of the tic disorder. Id. As discussed *infra*, the record demonstrates Plaintiff met his mild burden at step two by showing his tic disorder more than slightly affected his ability to perform basic work activities, and the ALJ erred in finding Plaintiff's tic disorder non-severe.

At the hearing, Plaintiff described his tic disorder as an "essential tremor," possibly caused by the inhalation of sarin nerve gas, sustained at some point during his twenty years of service in the U.S. Army. R. 68. Plaintiff testified his tic disorder causes him to shake uncontrollably, affects his entire upper body particularly his arms, and requires him to "sit on his hands" to reduce his apparent shaking. R. 53. Plaintiff further testified his tic disorder affected numerous areas of daily living, reducing his ability to clean dishes because he tended to "break a lot of dishes because they fall out of [his] hands," limited his ability to eat, shave himself, and

---

and occur during what is otherwise normal behavior. Tic Disorders and Twitches, http://www. http://www.webmd.com/brain/tic-disorders-and_twitches.

caused him to be bedridden most of the day. R. 52, 67. Plaintiff testified that his tic disorder prevented him from eating some foods such as peas, and required his girlfriend to help with his daily shaving. R. 67.

When the ALJ pointed out Plaintiff's prior work required the use of his hands, Plaintiff responded that he would frequently need help from coworkers for tasks requiring fine motor skills. R. 54. Plaintiff testified his disorder had progressively worsened since it originated some fourteen years ago, and treatment with Celebrex and Neurontin were ineffective at relieving his symptoms. R. 52-53. Plaintiff's tic disorder was on full display throughout the hearing, so much so that the ALJ let the record reflect Plaintiff had been "constantly shaking throughout the hearing." R. 68. Plaintiff's struggles with daily living activities and dependence on others for basic personal care suggests his tic disorder more than mildly limits his ability to perform basic work activities. Cf. Desmond v. Colvin, No. 2:13-CV-888-DNF, 2015 WL 1346828, at *4 (M.D. Fla. Mar. 24, 2015) (finding ALJ's step two analysis sufficient where plaintiff could perform activities of daily living despite hand tremors).

The medical opinion evidence further suggests Plaintiff's tic disorder affects his ability to perform basic work activities. On November 7, 2009, Plaintiff was examined at the Charlie Norwood Veterans Administration Medical Center by Yumeka Brezial-Mincey, a Nurse Practitioner ("NP"). R. 327. NP Brezial-Mincey opined Plaintiff "exhibit[ed] tremors of the upper extremities, face and neck." R. 328. However, NP Brezial-Mincey also opined Plaintiff did not exhibit "loss of muscle function, atrophy or fasciculation to any of the major muscle groups. He moves all extremities without difficulty. Full range of motion of the shoulders. . . muscle strength is 5/5." Id.

8

In 2006, Plaintiff met with Dr. John C. Morgan, a neurologist at the VA, who examined Plaintiff's tic disorder. R. 338. At the time, Dr. Morgan believed Plaintiff had psychogenic myoclonus and Parkinsonism, and when Dr. Morgan examined Plaintiff again on March 10, 2010, Dr. Morgan noted Plaintiff's tic disorder had "not progressed over time. . . ." Id. Dr. Morgan further opined Plaintiff had "intermittent jerking of the right arm as before that is variable in amplitude and frequency and distractible." R. 339. However, a motor exam revealed Plaintiff "had full strength throughout." Id. On January 11, 2012, eleven days after his date last insured, Plaintiff applied for disability in person and met with a Social Security examiner. R. 165. The examiner opined Plaintiff "had tremors during the entire interview. He also walked with a cane." Id.

Both Plaintiff's testimony and the medical opinion evidence suggests Plaintiff has met his mild burden in demonstrating his tic disorder more than minimally affects his ability to perform basic work activities. Because the Court cannot conclude that the decision to omit the tic disorder from the list of severe impairments is supported by substantial evidence, remand is warranted. The Court need not reach Plaintiff's remaining contentions. Of course, should the District Judge accept this recommendation, on remand, Plaintiff's claims must be evaluated in accordance with the five-step sequential evaluation process and in compliance with the applicable regulations and case law in all respects.

## IV. CONCLUSION

For the reasons set forth above, the Court **REPORTS** and **RECOMMENDS**, pursuant to sentence four of 42 U.S.C. § 405(g), that the Commissioner's final decision be **REVERSED** and that the case be **REMANDED** to the Commissioner for further consideration in accordance

with this opinion.

SO REPORTED and RECOMMENDED this 15th day of June, 2016, at Augusta, Georgia.

/s/ Brian K. Epps
BRIAN K. EPPS
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA